J-S01006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.C.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.K. | : | No. 1463 MDA 2016 |

Appeal from the Decree Entered August 5, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 251 of 2016

BEFORE: GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JANUARY 27, 2017**

Appellant, L.K. ("Mother"), appeals from the decree entered in the Lancaster County Court of Common Pleas, Orphans' Court, which granted the petition filed by B.P.K. ("Father") and L.S.K. ("Stepmother") for involuntary termination of Mother's parental rights to her minor child, A.L.C.K. ("Child"). We affirm.

In its opinions, the Orphans' Court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Mother raises five issues for our review:

> DID THE COURT ERR IN FINDING THAT MOTHER FAILED TO USE REASONABLE EFFORTS AND FIRMNESS TO ESTABLISH AND MAINTAIN A PARENTAL RELATIONSHIP WITH CHILD, AS MOTHER ATTEMPTED TO MAINTAIN CONTACT BY CONTACTING THE THERAPIST TO ENGAGE IN REUNIFICATION THERAPY AS WELL AS BY TEXTS SENT TO CHILD THROUGH MOTHER'S OLDER DAUGHTER?

DID THE PETITIONERS IMPOSE SIGNIFICANT BARRIERS TO MOTHER'S ABILITY TO MAINTAIN A PARENTAL RELATIONSHIP WITH CHILD, SUCH AS PROVIDING TO MEDICAL AND EDUCATIONAL PROFESSIONALS AN OUTDATED CUSTODY ORDER THAT INDIC[A]TED FATHER HAD SOLE LEGAL CUSTODY, AND CHANGING CHILD'S THERAPIST AND ENROLLING HER IN CYBER SCHOOL IN 2015?

DID THE COURT ERR IN FINDING ON PAGE 9 OF ITS OPINION THAT THE MATERNAL GRANDMOTHER SERVED AS A MEANS OF COMMUNICATION WITH CHILD, AS THE RECORD IN THIS CASE ESTABLISHES THAT PETITIONERS WERE ADAMANT THAT CONTACT OCCUR THROUGH THE COUNSELOR?

DID THE COURT ERR IN FINDING CREDIBILITY IN THE TESTIMONY OF CHILD, AS CHILD USED IN HER TESTIMONY TECHNICAL LANGUAGE REGARDING THESE PROCEEDINGS THAT INDICATED CHILD HAD BEEN METICULOUSLY COACHED AND PREPARED?

SHOULD THE COURT PROPERLY HAVE ORDERED THAT A BONDING ASSESSMENT BE CONDUCTED IN THIS CASE GIVEN THE AGE OF CHILD AND THE HISTORY OF CONTACT BETWEEN MOTHER AND CHILD?

(Mother's Brief at 20-21).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the [decree] of the [Orphans' C]ourt is supported by competent evidence, and whether the [Orphans' C]ourt gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [Orphans' C]ourt's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the [Orphans' C]ourt's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the [Orphans' C]ourt, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Father and Stepmother filed a petition for involuntary termination of Mother's parental rights to Child on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

*      *      *

**(b)   Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).[1]

Termination under Section 2511(a)(1) involves the following:

---

[1] A petition to terminate a natural parent's parental rights, filed by one natural parent against the other, is cognizable only if an adoption of the child is foreseeable.  ***See*** 23 Pa.C.S.A. § 2512(b) (stating petition for involuntary termination of parental rights filed by one natural parent against other natural parent must contain averment that petitioner will assume custody of child until such time as child is adopted).  Here, Father and Stepmother's petition for involuntary termination of Mother's parental rights confirmed Stepmother's intent to adopt Child and stated that Father and Stepmother will assume custody of Child until Child is adopted.

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination

- 5 -

will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative

performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert [herself] to take and maintain a place of importance in the child's life.'

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of… her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with… her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Jay J. Hoberg, we conclude Mother's issues merit no relief. The Orphans' Court's opinions comprehensively discuss and properly dispose of the questions presented. (*See* Orphans' Court Opinion, filed September 23, 2016, at 2-5;

- 7 -

Opinion in Support of Decree, filed August 5, 2016, at 5-14) (finding: **(1)** although Mother made some attempts to resume contact with Child after Mother's decision to take "break" from visits with Child in April 2015, Mother ceased all attempts to engage in reunification therapy with Child by August 2015; record shows Mother failed to exert effort or utilize opportunities to establish, maintain, and repair parental relationship with Child; Mother was historically inconsistent in attending visits, did not attend Child's medical or educational appointments, and did not attend Child's extracurricular functions; Mother did not utilize opportunities to repair relationship with Child through reunification therapy; Mother has failed in all respects to perform any parental duties or responsibilities to Child within six-month time period; **(2)** Mother voluntarily moved to New York City because she was not making progress with Child and wanted to "have a life"; even if court accepted Mother's argument that Father and Stepmother placed significant barriers to Mother's ability to maintain parental relationship with Child, Mother still had duty to exercise reasonable firmness in resisting obstacles, and bore burden to show that obstacles imposed were insurmountable, despite her genuine and sincere efforts; Mother took no affirmative steps to remedy her lack of access to Child's records; Mother did not even request copy of controlling custody order, which was issued in 2012, until February 2016; Mother could have easily remedied any obstacle she faced resulting from outdated custody order; **(3)** Child, Father, and Stepmother have

maintained relationship with maternal grandparents; Mother was aware of this relationship, but she failed to use maternal grandparents as resource to rekindle her relationship with Child; Mother testified she left notes at maternal grandmother's house for Child to find, but such conduct does not equate to using maternal grandmother as resource to reconnect with Child;[2] **(4)** Child, who is now 12-years-old, testified at termination hearing; court listened to Child's answers to questions and observed her demeanor; Child was articulate, intelligent, and mature; court did not find Child's testimony was coached or prepared; Child's use of legal phrases does not automatically call into question her credibility; instead, court found Child's testimony was credible, compelling, persuasive, and supported finding that involuntary termination of Mother's parental rights best served Child's interests; **(5)** court is under no obligation to order bonding assessment; Mother has had inconsistent contact with Child since 2010; from April 2015 to present, Mother has had no contact whatsoever with Child; Child's bond with Mother is attenuated at best and minimal when compared with far greater bond Child has with Stepmother; Child's therapist testified that given Child's history with Mother and Mother's most recent absence, evaluation process itself might be detrimental to Child; thus, court saw little benefit to ordering bonding assessment; Mother's testimony at termination hearing was

---

[2] In its September 23, 2016 opinion, the court interchangeably refers to Child's maternal grandmother as "MGM" and "MGP."

inconsistent, incredible, and devoid of supporting evidence; termination of Mother's parental rights was proper under Section 2511(a)(1) and (b)). Accordingly, we affirm on the basis of the Orphans' Court's opinions.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017